### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF NEW MEXICO

ALLSTATE INSURANCE
COMPANY,

                Plaintiff,

v.                                                Civ. No. 03-645 JH/RHS

ANTHONY L. WALLACE,

                Defendant.

### MEMORANDUM OPINION AND ORDER

This matter comes before the Court on Plaintiff Allstate Insurance Company's ("Allstate") *Motion for Summary Judgment with Incorporated Memorandum of Points and Authorities* [Doc. No. 13]. After a thorough review of the parties' briefs and relevant authorities, the Court concludes that the motion should be denied.

### FACTS

The following facts are, for the purposes of this motion, undisputed by the parties. Defendant Anthony L. Wallace ("Wallace") is the owner of a home located at 163 Pearl Drive in Rio Rancho, New Mexico. Wallace lived in that home and obtained a homeowner's insurance policy from Plaintiff Allstate. That policy contains the following relevant provisions:

> **Losses We Cover Under Coverage X**
> Subject to the terms, conditions, and limitations of this policy, Allstate will pay damages which an insured person becomes legally obligated to pay because of bodily injury or property damage arising from an occurrence to which this policy applies, and is covered by this part of the policy.
> \*\*\*

> **Losses We Do Not Cover Under Coverage X:**
>
> 1. We do not cover any bodily injury ... intended by, or which may reasonably be expected to result from the intentional ... acts or omissions of, any insured person.
> ***
> 8. We do not cover any bodily injury which results in any manner from the discharge, dispersal, release or escape of vapors, fumes, acids, toxic chemicals, toxic gasses, toxic liquids, toxic solids, waste materials or other irritants, contaminants or pollutants.
> ***
> 12. We do not cover bodily injury or property damage arising out of the past or present business activities of an insured person.
> ***
> 15. We do not cover any liability an insured person assumes arising out of any contract or agreement.

In approximately August 1996, Wallace rented the home on Pearl Drive to Robert E. Sortomme and his family. The Sortommes moved into the house in approximately September of 1996, where they lived until approximately February of 1998.

On March 20, 1998, the Sortommes filed a lawsuit against Wallace in Sandoval County, New Mexico ("the underlying litigation"). The complaint in the underlying litigation alleges two separate and distinct claims: (1) that Wallace breached his rental contract with the Sortommes by requiring the Sortommes to pay for monthly water usage; and (2) that during the latter part of 1996 and throughout 1997, the Sortommes suffered personal injuries as a result of carbon monoxide emissions from a kitchen stove that Wallace failed to properly maintain and repair. Further, the Sortommes claim that they are entitled to compensatory and punitive damages. *See* Complaint, attached as Exhibit B to Allstate's motion.

On May 28, 2003, Allstate filed its Complaint For Declaratory Judgment in this case, asking this Court to declare as a matter of law that, in accordance with the terms of the policy, Allstate has

no duty to defend or indemnify Wallace against the Sortommes' claims in the underlying litigation. On the motion presently before the Court, Allstate contends that there are no genuine issues of material fact and that summary judgment should be entered in its favor.

## DISCUSSION

### I. RULES OF CONSTRUCTION TO BE APPLIED

The Court concludes, and the parties agree, that its interpretation of the relevant language in Allstate's insurance policy is governed by New Mexico law. New Mexico case law indicates that insurance contracts should be construed in the same manner as other contracts. *Rummel v. Lexington Ins. Co.*, 1997-NMSC-041, ¶ 18, 123 N.M. 752, 945 P.2d 970. The insurance contract will be reviewed as a whole, starting, of course, with the language of the agreement itself. *Id*. ¶ 20. The traditional rules of presentation, syntax, and grammar should be employed in the normal course of interpretation. *Id*.; *C.R. Anthony Co. v. Loretto Mall Partners*, 112 N.M. 504, 510 n. 5, 817 P.2d 238, 244 n. 5 (1991). "[W]hen a word is not defined in the insurance policy, it must be interpreted in its usual, ordinary and popular sense." *Estate of Galloway v. Guaranty Income Life Ins. Co*., 104 N.M. 627, 628, 725 P.2d 827, 828 (1986); *Grisham v. Allstate Ins. Co.*, 1999-NMCA-153, ¶ 8, 128 N.M. 340, 992 P.2d 891 ("Undefined words in an insurance policy are given their plain and ordinary meaning if that can reasonably be ascertained.").

Whether a policy is reasonably susceptible to different interpretations is a question of law to be determined by the court. *C.R. Anthony Co.*, 112 N.M. at 509, 817 P.2d at 243. An ambiguity is not established simply because the parties disagree on the proper interpretation. *Trujillo v. CS Cattle Co.*, 109 N.M. 705, 709, 790 P.2d 502, 506 (1990). Reasonableness is the touchstone for determining whether there is a true lack of clarity. *Id*.

The concept of reasonableness has a somewhat specialized meaning in the insurance context, however. When evaluating competing interpretations of a policy, the courts should view the language issue from the standpoint of "a hypothetical reasonable insured." *Computer Corner, Inc. v. Fireman's Fund Ins. Co.*, 2002-NMCA-054, ¶¶ 7, 13, 132 N.M. 264, 46 P.3d 1264; *see also Rummel*, 1997-NMSC-041, ¶ 19, 123 N.M. 752, 945 P.2d 970. Thus, the question the court should ask itself initially is what understanding a reasonably intelligent, non-lawyer lay person might glean from the policy, in light of the usual meaning of the words and the circumstances leading to purchase of the policy. *Id*. Specialized knowledge of the insurance industry case law, academic treatments, and industry norms or standards should not enter into the inquiry. *Computer Corner Inc.*, 2002-NMCA-054, ¶¶ 7, 13, 132 N.M. 264, 46 P.3d 1264.

Furthermore, the general rule is that exclusionary clauses in insurance contracts are to be construed narrowly. *See Knowles v. United Servs. Auto. Ass'n*, 113 N.M. 703, 705, 832 P.2d 394, 396 (1992). "It is the obligation of the insurer to draft an exclusion that clearly and unambiguously excludes coverage." *Computer Corner, Inc. v. Fireman's Fund Ins. Co.*, 2002-NMCA-054, ¶ 7, 132 N.M. 264, 46 P.3d 1264. However, the general rule "cannot be utilized to override the clear and unambiguous terms of an exclusion." *Grisham*, 1999-NMCA-153, ¶ 13, 128 N.M. 340, 992 P.2d 891. "[E]xclusionary definitions in an insurance contract are to be enforced so long as their meanings are clear and they do not conflict with the statutory law." *Safeco Ins. Co. of Am., Inc. v. McKenna*, 90 N.M. 516, 518, 565 P.2d 1033, 1035 (1977). "In construing standardized policy language, our focus must be upon the objective expectations the language of the policy would create in the mind of a hypothetical reasonable insured, who, we assume, will have limited knowledge of insurance law." *Computer Corner*, 2002-NMCA-054, ¶ 7, 132 N.M. 264, 46 P.3d 1264.

With these principles in mind, the Court addresses Allstate's arguments in turn.

## II.     THE CLAIM FOR BREACH OF CONTRACT

The first question before the Court is whether or not Allstate's policy covers one or more of the claims in the underlying litigation. If so, both Wallace and Allstate have agreed that Allstate is obligated to defend the entire case, including any claims not covered by the policy. *See American Emp. Ins. Co. v. Continental Cas. Co.*, 85 N.M. 346, 512 P.2d 674, 677 (1973) (finding that it is immaterial that relief of a type not covered by the policy may also be sought against the insured, or that relief for alleged acts not covered by the policy may also be sought, as long as the claimant has "pleaded any grounds against the insured coming within the terms of the policy.").

The Sortommes' first claim against Wallace is for breach of the rental contract. Specifically, they claim that Wallace violated the agreement by requiring the Sortommes to pay for water use, when in fact the contract states that Wallace will bear the cost of water. Allstate's policy does not cover this claim.

The policy defines the coverage it supplies as follows: "**Allstate** will pay damages which an insured person becomes legally obligated to pay because of **bodily injury** or **property damage** arising from an **occurrence** to which this policy applies, and is covered by this part of the policy." (emphasis in original). Further, the policy defines each of these highlighted terms. An "occurrence" is "an accident...resulting in bodily injury or property damage." "Bodily injury," in turn, means "physical harm to the body, including sickness or disease, and resulting death...", while "property damage" is defined as "physical injury to or destruction of tangible property, including loss of its use resulting from such physical injury or destruction."

From this language, it is clear that Wallace's alleged breach of contract by failing to pay for

the Sortommes' water use is not an "occurrence" under the policy because, under the terms of their Complaint, that breach did not result in physical, bodily harm to the Sortommes, nor did it result in the physical injury or destruction of tangible property.  Thus, the Court finds that the Allstate policy does not cover the Sortommes' claim against Wallace for breach of contract.   For this reason, the Court need not address whether or not the exclusionary clause pertaining to "any liability an insured person assumes arising out of any contract or agreement" applies in this case.

## II.     THE CLAIM FOR NEGLIGENT MAINTENANCE AND REPAIR

The Sortommes' second claim against Wallace is for his allegedly negligent maintenance and repair of the stove, which led to the emission of carbon monoxide and their personal injuries.  Unlike the claim for breach of contract, there is no doubt that the claim for negligence satisfies the policy's definitions of "occurrence" and "bodily injury."  The inquiry, therefore, is whether or not the Sortommes' negligence claim falls under one of the policy's exclusionary clauses.

### A.     Exclusion Relating To Fumes, Toxic Gasses, And Pollutants

Allstate contends that it has no duty to defend or indemnify Wallace because the policy provides that "We do not cover any bodily injury which results in any manner from the discharge, dispersal, release or escape of vapors, fumes, acids, toxic chemicals, toxic gasses, toxic liquids, toxic solids, waste materials or other irritants, contaminants or pollutants."  Allstate argues that carbon monoxide is a vapor, fume, toxic gas, irritant, and pollutant, and therefore the exclusionary clause applies. Wallace, in turn, argues that carbon monoxide emissions do not fall under the exclusionary clause, citing various cases in which courts have found that similar exclusionary clauses to be inapplicable.

Both parties rely upon the Tenth Circuit's decision in *Regional Bank of Colorado, N.A. v. St.*

*Paul Fire and Marine Ins. Co.*, 35 F.3d 494 (10th Cir. 1994). In *Regional Bank* (which was decided under Colorado state law very similar to the New Mexico law that applies here), the insured was sued by a claimant who alleged that she had suffered from inhalation of carbon monoxide emitted from a faulty water heater in her apartment. *Id*. at 495. The insurer denied coverage, citing the policy's pollution exclusion clause, which provided in pertinent part:

> **Pollution**. We won't cover bodily injury, property damage or medical expenses that result from pollution...
> ***
> **Pollution** means the actual, alleged or threatened discharge, dispersal, release or escape of pollutants.
> **Pollutants** mean any solid, liquid, gaseous, or thermal irritant or contaminant, including:
> —smoke, vapors, soot, fumes;
> —acids, alkalis, chemicals; and
> —waste

*Id*. at 496. Applying the "rule of reasonable expectations" of a typical policyholder, the Tenth Circuit found that the exclusionary clause did not apply. *Id*. at 497-98. First, the court pointed out that "if the heater malfunction had caused a fire and injured the tenants, there would have been coverage." *Id*. at 498. Next, the court reasoned that the insurer's interpretation of the exclusion had stretched its plain meaning, observing that "[w]hen viewed in isolation, the terms 'irritant' and 'contaminant' are 'virtually boundless, for there is no substance or chemical in existence that would not irritate or damage some person or property.'" *Id*. (quoting *Pipefitters Welfare Educ. Fund v. Westchester Fire Ins. Co.*, 976 F.2d 1037, 1043 (7th Cir. 1992)). The court concluded that "an ordinary policyholder would not reasonably characterize carbon monoxide emitted from a residential heater which malfunctioned as 'pollution.'" *Id*.

Recently, the Supreme Court of Connecticut interpreted an identically worded pollution

7

exclusionary clause in an Allstate homeowner's insurance policy. In *Allstate Ins. Co. v. Barron*, 848 A.2d 1165 (Conn. 2004), a house insured by Allstate burned, killing several persons in the process. The cause of death was smoke inhalation and thermal burns, *id*. at 1180, although Allstate argued for the first time on appeal that the decedents actually died from carbon monoxide poisoning. *Id*. at 1181. As here, the issue was whether Allstate had a duty to defend and indemnify under its policy. Although Allstate argued that the claim fell under the policy's pollution exclusion clause, the court in *Barron* held that "smoke from a house fire, *including any component of such smoke*, is not covered by the pollution exclusion clause at issue in the present case." (emphasis added). *Id*. at 1181. The court reasoned that under the section of the policy dealing with property loss, smoke was a covered cause of loss, while "vapors, fumes, acids, toxic chemicals, toxic gasses, toxic liquids, toxic solids, waste materials or other irritants, contaminants or pollutants" (a list identical to the pollution exclusion clause) were not. *Id*. at 1182. Therefore, the court concluded that under the policy "smoke" was a substance separate and apart from the items on the list of vapors, fumes, etc. that fell under the family liability policy's pollution exclusion clause.

A number of courts have concluded that carbon monoxide emissions in residential buildings are not pollutants within the meaning of a pollution exclusion clause. One case, *Thompson v. Temple*, 580 So.2d 1133, 1134-35 (La. App. 1991), is particularly instructive because it involves similar facts and an Allstate homeowner's policy with virtually identical language to that at issue in this case. The court held that the pollution exclusion clause did not operate to exclude injuries to tenants caused by carbon monoxide from a leaking gas heater. *Id*. Similarly, in *Kenyon v. Security Ins. Co. of Hartford*, 163 Misc.2d 991, 996-98, 626 N.Y.S.2d 347 (1993)), a condominium resident was injured as result of carbon monoxide poisoning from faulty design or installation of furnace. The court in

*Kenyon* found that a reasonable insured would have thought that he was covered for the claim. *Id*. at 998.

In this case, the Court agrees with the reasoning in *Regional Bank*, *Barron*, *Thompson*, and *Kenyon*, and concludes that the pollution exclusion clause in Allstate's policy does not apply here. First, a reasonable policyholder would expect that a claim for personal injury caused by carbon monoxide emissions from a defective stove would be covered under the policy. The terms "discharge, dispersal, release or escape," particularly when paired with the phrase "vapors, fumes, acids, toxic chemicals, toxic gasses, toxic liquids, toxic solids, waste materials or other irritants, contaminants or pollutants" imply large scale environmental pollution or contamination, as opposed to a small scale emission from a household appliance inside the home. This is also reinforced by the fact that many of the policy's exclusions involve items outside of or otherwise not part of the house (such as aircraft, watercraft, motor vehicles), premises other than the insured home, or damage caused by war or warlike acts. By contrast, a stove is an integral part of the insured premises—so much so that one may not rent out a home without a working stove—such that a reasonable insured would expect to be covered by an injury caused by that stove.

Second, Allstate's interpretation of the policy "stretches the plain meaning of the policy exclusion" because each of the terms (including irritant and contaminant) is exceptionally broad—virtually any substance may act as an irritant or contaminant under the right circumstances. *See Regional Bank*, 35 F.3d at 498. As the Tenth Circuit observed, "[w]ithout some limiting principle, the pollution exclusion clause would extend far beyond its intended scope, and lead to some absurd results," such as excluding coverage for a slip and fall on the spilled contents of a bottle of Drano or an allergic reaction to chlorine in a swimming pool. *Id*. (quoting *Pipefitters Welfare Educ.*

9

*Fund v. Westchester Fire Ins. Co.*, 976 F.2d 1037, 1043 (7th Cir. 1992).

The Court is not alone in reaching this result. In various similar instances, courts have held that the pollution exclusion and similar limiting provisions did not bar coverage for injuries caused by other "environmental pollutants" such as the ingestion of lead paint by tenants in a rented residence, *Atlantic Mut. Ins. Co. v. McFadden*, 595 N.E.2d 762 (Mass. 1992); the death of a man who inhaled poisonous fumes when he applied adhesive to install a carpet on his boat, *Bituminous Cas. Corp. v. Advanced Adhesive Tech., Inc.*, 73 F.3d 335, 337-338 (11th Cir. 1996); injuries caused by exposure to fumes from toxic cements and solvents and congestive dusts created by rubber fabricating processes, *Lumbermens Mut. Cas. Co. v. S-W Indus., Inc.*, 23 F.3d 970, 982 (6th Cir. 1994), *superceded by* 39 F.3d 1324 (6th Cir. 1994); injuries caused by the inhalation of chemical fumes from a carpet, *Garfield Slope Hous. Corp. v. Public Serv. Mut. Ins. Co.*, 973 F. Supp. 326, 332-333 (E.D.N.Y. 1997); injuries resulting when fumes emanated from cement used to install a plywood floor, *Calvert Ins. Co. v. S & L Realty Corp.*, 926 F. Supp. 44, 46-47 (S.D.N.Y. 1996); injuries sustained from exposure to photographic chemicals, *Center for Creative Studies v. Aetna Life & Cas. Co.*, 871 F. Supp. 941, 946 (E.D. Mich. 1994); injuries to individuals who ingested malathion during a municipal pesticide spraying operation, *Westchester Fire Ins. Co. v. Pittsburg, Kan.*, 768 F. Supp. 1463, 1468-1471 (D. Kan. 1991), *aff'd. sub nom. Pennsylvania Nat'l Mut. Cas. Ins. Co. v. Pittsburg, Kan.*, 987 F.2d 1516 (10th Cir. 1993); injuries incurred by a United States Department of Agriculture inspector when a gasket failed in a refrigeration system causing an ammonia leak, *Ekleberry, Inc. v. Motorists Mut. Ins. Co.*, No. 3-91-39, 1992 WL 168835 (Ohio Ct. App. July 17, 1992); injuries suffered by persons exposed to an excessive accumulation of inadequately ventilated exhaled carbon dioxide in an office building, *Donaldson v. Urban Land Interests, Inc.*, 211 Wis.2d

224, 225-227, 564 N.W.2d 728 (1997); and carbon monoxide released by faulty heating and ventilation systems, *Stoney Run Co. v. Prudential-LMI Commercial Ins. Co.*, 47 F.3d 34, 37-38 (2d Cir. 1995); *Regional Bank v. St. Paul Fire and Marine Ins. Co.*, 35 F.3d 494, 497-98 (10th Cir. 1994); *Thompson v. Temple*, 580 So.2d 1133, 1135 (La. Ct. App. 1991); *American States Ins. Co. v. Koloms*, 687 N.E.2d 72 (Ill. 1997).

The common thread between these decisions is that "[a]ll involve injuries resulting from everyday activities gone slightly, but not surprisingly, awry," *Pipefitters Welfare Educ. Fund v. Westchester Fire Ins. Co.*, 976 F.2d 1037, 1044 (7th Cir. 1992), and in each, the insurer urged a broad reading of the pollution exclusion clause to cover the accident at issue. However, an objectively reasonable insured, reading the language of the typical pollution exclusion, would not expect a disclaimer of coverage for these types of mishaps even though they involve "discharges," "dispersals," "releases," and "escapes" of "contaminants," "toxic gasses," and "irritants." Certainly, one may find decisions to the contrary. *See, e.g., Matcon Diamond, Inc. v. Penn Nat'l Ins. Co.*, 815 A.2d 1109 (Pa. Super. 2003); *Assicurazioni Generali, S.p.A. v. Neil*, 160 F.3d 997 (4th Cir. 1998). However, under the present facts, the Court finds them to be unpersuasive. The pollution exclusion clause does not apply here.

    **B.**    <u>**Exclusion For Business Activities**</u>

Allstate's final argument is that Wallace's rental of the house to the Sortommes is an excluded business activity under the policy, which provides: "We do not cover bodily injury or property damage arising out of the past or present business activities of an insured person." The policy also defines business as "any property rented of held for rental by an insured person. Rental of your residence premises is not considered a business when: (1) it is rented occasionally for residential

11

purposes; (2) a portion is rented to not more than two roomers or boarders; or (3) a portion is rented as a private garage."

It is undisputed that Wallace rented the entire Pearl Street residence to the Sortommes for approximately 18 months, a fact that renders it much more than an "occasional" rental. Thus, none of the exceptions to the business exclusion clauses applies here. Wallace counters this argument with his affidavit, which states that prior to receiving the Sortommes' claim, he called his Allstate agent and informed "the person who answered the phone" that he intended to use the Pearl Street residence as a rental property and discussed with that person "any changes in the policy or premium which would result" from such a rental arrangement. Affidavit of Defendant (Defendant's Ex. 4) at ¶ 5. Wallace then argues that, because he informed Allstate of his plans to rent out the home and Allstate did not inform him of any changes in coverage and still continued to accept his premium payments, Allstate may not now rely upon the business rental exclusion.

Although Defendant's affidavit is somewhat vague, the Court finds that it is enough to create a genuine issue of material fact on the question of whether Allstate was informed of the change in use of the property and therefore has waived its right to rely on the business activity exclusion. That fact issue will be resolved by a jury at trial.

IT IS THEREFORE ORDERED that Plaintiff Allstate Insurance Company's *Motion for Summary Judgment with Incorporated Memorandum of Points and Authorities* [Doc. No. 13] is DENIED.

_____
UNITED STATES DISTRICT JUDGE